[Civ. No. 39912. First Dist., Div. Four. May 23, 1977.]

Estate of JAMES S. NICHOLAS, Deceased.
SUSAN N. HANRAHAN, Petitioner and Respondent, v.
WALTER E. LEWIS et al., Objectors and Appellants.

**COUNSEL**

Emmet B. Hayes for Objectors and Appellants.

S. Lennart Cederborg and Edward J. Boessenecker for Petitioner and Respondent.

## Opinion

**RATTIGAN, J.**—James S. Nicholas, the decedent above named, died in 1974. Appellants are the heirs of Maude A. Nicholas, (1) to whom James had been married until they were divorced in 1945 and (2) upon whose subsequent death, in the same year, he had acquired full title to certain property which had been held by him and Maude in joint tenancy before and after their divorce. In probate proceedings conducted upon his death, appellants claimed an interest in the property pursuant to the law of intestate succession. They appeal from an order of the probate court denying their claim.

The appeal has been taken upon a clerk's transcript and an agreed statement filed in accordance with rule 6(a), California Rules of Court. These sources, and certain documentary evidence received by the probate court, support the factual and procedural recitals which follow.

James and Maude were married in 1919. During their marriage they acquired and held, as joint tenants, a parcel of real property located in Oakland. In 1944, and in connection with a divorce action then pending between them, they entered into a written property settlement agreement (hereinafter "the 1944 agreement") in which they divided their marital property and provided that they would continue to hold the Oakland property in joint tenancy until one of them died.[1]

---

[1]We first quote the 1944 agreement only as necessary (1) to support some narrative details which have been omitted from the agreed statement and (2) to describe the parties' unusual arrangement for the post-divorce retention of the joint tenancy. The pertinent provisions of the agreement appear in its prefatory recitals and in its paragraph 12, which respectively provide:

"THIS AGREEMENT made and entered into this 10th day of August, 1944, by and between

"MAUDE A. NICHOLAS, party of the first part, and

"J. S. NICHOLAS, party of the second part,
"WITNESSETH:

"WHEREAS, the parties hereto were married on October 11, 1919, and separated on or about September 9, 1942, and are desirous of settling and adjusting all property rights growing out of said marriage relation, including the right of support and maintenance and all other claims which either of the parties hereto has against the other, and to apportion all property in which either of the parties has any interest; and

"WHEREAS, those certain premises . . . [describing the Oakland property] . . . were purchased with community funds and the title thereto stands in the names of the parties hereto as joint tenants,

" . . . . . . . . . . . . . . . . . . .

"12. The parties hereto agree that title to . . . [the Oakland property] . . . shall remain in the names of the parties hereto as joint tenants until such time as either of the parties hereto dies (in which case, the title thereto shall vest in the survivor) . . . ."

As pertinent, the parties further agreed in paragraph 12 that neither would sell or

The marriage was dissolved by a final judgment of divorce entered in the action on August 11, 1945. Maude died on October 15, 1945. James thereafter commenced a judicial proceeding pursuant to Probate Code section 1170, seeking termination of the joint tenancy as contemplated in paragraph 12 of the 1944 agreement (quoted in fn. 1, *ante*). On February 8, 1946, he obtained a decree which vested title to the Oakland property in him as the surviving joint tenant.

■ James died on December 8, 1974, leaving neither a surviving spouse nor issue. He left a will which was valid in form, and was admitted to probate, but was ineffective in operation because all of the beneficiaries named in it had predeceased him. His estate is accordingly to be distributed pursuant to the law of intestate succession.

The Oakland property, which he had obviously held in his name alone since 1946, was inventoried among the assets of his estate. Appellants, as the heirs of Maude, claimed an interest in the property under Probate Code sections 228 or 229.[2] Respondent, the sole heir of James, claimed it as part of his entire estate.

---

encumber his or her interest in the property without the consent of the other; that Maude would occupy, rent-free, "one of-the apartments in said premises" (which were then identified as an "apartment house" which she would manage); and that the monthly income from the premises would be reserved for taxes and maintenance of the property, and otherwise divided between the parties, in a specified manner. The paragraph concluded with these two sentences:

"It is mutually understood and agreed that in the event of the death of either party hereto, then by operation of law said real property shall vest in the surviving party hereto unless said real property shall have·been sold or transferred (with the consent of both parties hereto) prior to the death of one of the parties hereto. Each of the parties hereto agrees that they, respectively, will forthwith make a will giving [*sic*] . . . [the Oakland property] . . . to the other party hereto, and that they, respectively, will not revoke or modify the provisions thereof during the lifetime of the other party hereto."

[2]Except where expressly indicated otherwise, all statutory references herein are to the Probate Code. Sections 228 and 229 appear in division 2, which controls "succession" to property in the case of intestacy. (See § 200.) As pertinent here, the two sections respectively provide (italics added):

"228. *If* the *decedent leaves neither spouse nor issue,* and the estate *or any portion thereof was community property of the decedent and a previously deceased spouse,* and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or *became vested in the decedent on the death of such spouse by right of survivorship* in a homestead, or *in a joint tenancy between such spouse and the decedent* or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or

After a hearing upon the parties' opposing petitions, the probate court made an "Order" in which it stated in pertinent part (parentheses in the original):

" . . . [T]he court finds the following facts:

"1. On August 10, 1944, Maude A. Nicholas and J.S. Nicholas (James S. Nicholas) entered into . . . [the 1944 agreement] . . . .

"2. Maude A. Nicholas and James S. Nicholas were granted an interlocutory decree of divorce on August 11, 1944. The decree became final on August 11, 1945.

"3. . . . [The Oakland property] . . . was acquired [,] as property held in joint tenancy, during their marriage.

"4. Said property was acquired by community assets and constituted community property prior to dissolution of the marriage.

"5. The [1944] Agreement provided that . . . [the] . . . property was to be held by these parties in joint tenancy with right of survivorship subsequent to dissolution, [in] Paragraph 12 of the Agreement. All other property was, pursuant to this Agreement, deemed to be [the] sole and separate property of the parties as described therein.

"6. This Agreement also provided that both parties 'mutually agree and do hereby waive, relinquish and surrender any and all claims or rights to inherit from the other in case one or both of the parties, hereto shall die intestate (except as herein provided) . . .'

---

if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation. . . ."

"229. (a) *If the decedent leaves neither spouse nor issue,* and the estate *or any portion thereof was separate property of a previously deceased spouse,* and came to the decedent from such spouse by gift, descent, devise or bequest, or *became vested in the decedent on the death of such spouse by right of survivorship* in a homestead or *in a joint tenancy between such spouse and the decedent,* such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to .the parents of the deceased spouse, in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation. . . ."

The agreed statement establishes that appellants claim an interest in the Oakland property as "descendants by right of representation" of a deceased brother of Maude A. Nicholas, and that respondent is the sole heir of James S. Nicholas because she is the only child of his deceased sister.

"7. At Mrs. Nicholas's death (October 15, 1945), the joint tenancy property became the sole and separate property of Mr. Nicholas by operation of law. At the time of her death, she was not Mr. Nicholas's spouse.

"8. Although Mr. Nicholas died leaving a will, all legatees and devices [*sic*] having predeceased him, he in legal effect died intestate.

"9. By virtue of this [1944] Agreement, Mrs. Nicholas relinquished all claims to this and any other property in Mr. Nicholas's estate.

"      .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"THEREFORE, the court orders, adjudges and decrees that Mrs. Nicholas's estate and her heirs have no claims or standing to assert claims to the . . . [Oakland property] . . . , or any other property in the estate of James S. Nicholas."

On their appeal from this order, appellants do not challenge the finding (no. 4) that the Oakland property "constituted community property" of James and Maude "prior to dissolution of the marriage." The finding thus establishes that no interest in the property was Maude's "separate property" at any pertinent time, and that section 229 does not apply for this reason alone. (See fn. 2, *ante.*) Appellants do not contend to the contrary, but press their alternative claim that they are entitled to take a one-half interest in the property under section 228. (See *ibid.*)

The contention rests upon a misreading of the statute, which we paraphrase to the present facts in this way: Appellants are entitled to take under it upon the three conditions that (1) " . . . the decedent [James] leaves neither spouse nor issue, *and* [2] the . . . [Oakland property] . . . *was community property* of the decedent and a previously deceased spouse, *and* . . . [3] became vested in the decedent *on the death of such spouse* by right of survivorship . . . in a joint tenancy *between such spouse and the decedent* . . . ." (Italics added.)

Appellants have established the first condition. They have established the second one to the extent that the language of section 228, as just paraphrased, might be read to refer to property which was "community property of the decedent and a previously deceased spouse" *at any time.* (See Note (1939) 13 So.Cal.L.Rev. 115, 117.)

However, the Oakland property did not become "vested in the decedent [James] on the death of . . . [a previously deceased] . . . *spouse* by right of survivorship . . . in a joint tenancy between such *spouse* and the decedent . . . ." (Italics again added.) It became "vested" in him "on the death" of Maude, and "by right of survivorship in a joint tenancy" between him and her, but at a time when she was not his "spouse" because the previously-entered final judgment of divorce had dissolved their spousal relationship and had made both of them unmarried persons for all pertinent purposes. (Civ. Code, present § 4501; *id.,* former § 91 as last amended in 1874 [see Historical Note, 12A West's Ann. Civ. Code (1970 ed.) § 91, p. 99]; *Adler* v. *Superior Court* (1960) 187 Cal.App.2d 207, 212 [9 Cal.Rptr. 373].) The trial court made this determination in its finding no. 7, which is true as a matter of law. The third of the requisite conditions having failed, section 228 may not avail appellants.

The balance of their argument rests upon a labored interpretation of the 1944 agreement in support of appellants' further contention that the law did not permit James and Maude, in the agreement, to frustrate the legislative scheme which appellants envision in section 228. Having concluded above that the section does not apply in any event, we need not pursue appellants' argument further. We may sufficiently meet it by stating—and we hold—that all of the probate court's pertinent findings are·fully supported by the record.

The order is affirmed.

Caldecott, P. J., and Christian, J., concurred.